UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHNNIE FELTON,

                              Plaintiff,

                    v.

PLUG POWER INC.,

                              Defendant.

**ELECTRONICALLY
FILED**

Case No. 1:23-cv-00887
(LEK/ML)

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendant*
22 Corporate Woods Blvd, Suite 501
Albany, New York 12211
T: 518.533.3000
F: 518.533.3299

*Of Counsel:*

   Michael D. Billok, Esq.
   Paul J. Buehler, III, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

SUMMARY OF MATERIAL FACTS NOT IN GENUINE DISPUTE ....................................... 1

SUMMARY JUDGMENT STANDARD .................................................................................. 1

ARGUMENT ....................................................................................................................... 1

POINT I         Plaintiff Fails to State a Claim for Race and Color Discrimination ........................ 1

POINT II        Plaintiff's Retaliation Claims Fail ................................................................... 6

    A.  Plaintiff Did Not Engage In Any Protected Activity ......................................... 6

    B.  Plaintiff Cannot Establish Causation .............................................................. 9

POINT III       Plaintiff's Employment Was Terminated for a Legitimate, Non-Discriminatory, Non-Retaliatory Reason .......................................................................................... 11

POINT IV        Plaintiff's Hostile Work Environment Claims Also Fail ................................... 14

    A.  Plaintiff's Allegations Do Not Give Rise to an Actionable Hostile Work Environment Based on Race or Color ............................................................. 15

    B.  There Is Insufficient Evidence to Impute Liability to Plug Power .................... 19

       i.   Plaintiff Cannot Impute Liability to Plug Power Under Federal Law ........... 19

      ii.  There is Similarly No Basis To Impute Liability Under New York Law ......... 22

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Northstar Location Servs., LLC,*
   2010 U.S. Dist. LEXIS (W.D.N.Y. Oct. 5, 2010)....................................................2

*Alfano v. Costello,*
   294 F.3d 365 (2d Cir. 2002)................................................................14, 16

*Bader v. Special Metals Corp.,*
   985 F. Supp. 2d 291 (N.D.N.Y. 2013)......................................................6

*Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free School Dist.,*
   750 Fed. Appx. 41 (2d Cir. 2018)........................................................14, 17

*Brusso v. Imbeault,*
   699 F. Supp. 2d 567 (W.D.N.Y. 2010)....................................................7

*Burlington Indus. v. Ellerth,*
   524 U.S. 742 (1998)......................................................................19

*Comcast Corporation v. National Association of African American-Owned Media,*
   140 S. Ct. 1009 (2020)....................................................................2

*Cooney v. Consol. Edison,*
   220 F.Supp.2d 241 (S.D.N.Y. 2002), *aff'd*, 63 Fed. Appx. 579 (2d Cir. 2003).....................12

*Cruz v. Coach Stores, Inc.,*
   202 F.3d 560 (2d. Cir. 2000)...........................................................6, 7

*Davis-Bell v. Columbia University,*
   851 F.Supp.2d 650 ......................................................................18

*Diagne v. New York Life Ins. Co.,*
   2010 U.S. Dist. LEXIS 129530 (S.D.N.Y. Dec. 8, 2010) ..................................18

*Distasio v. Perkin Elmer Corp.,*
   157 F.3d 55 (2d Cir. 1998)..............................................................19

*Dodd v. City Univ. of N.Y.,*
   489 F. Supp. 3d 219 (S.D.N.Y. 2020).....................................................9

*Drummond v. IPC Int'l, Inc.,*
   400 F. Supp. 2d 521 (E.D.N.Y. 2005) ....................................................17

*Durand v. Excelsior Care Group LLC,*
   2020 U.S. Dist. LEXIS 231591 (E.D.N.Y. Dec. 9, 2020) ..................................5

*Durkin v. Verizon New York, Inc.*,
    678 F. Supp. 2d 124 (S.D.N.Y. 2009) ..................................................................22

*Edrisse v. Marriott Int'l, Inc.*,
    757 F. Supp. 2d 381 (S.D.N.Y. 2010) ..................................................................19

*Edwards v. City of New York*,
    2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. Dec. 19, 2005) ....................................12

*Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*,
    2008 U.S. Dist. LEXIS 58040 (S.D.N.Y. 2008) ..................................................16

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) .............................................................................................19

*Farzan v. Wells Fargo Bank, N.A.*,
    2013 U.S. Dist. LEXIS 169743 (S.D.N.Y. Dec. 2, 2013) ................................4, 13

*Fayson v. Kaleida Health Inc.*,
    2002 U.S. Dist. LEXIS 18591 (W.D.N.Y. 2002), *aff'd*, 71 Fed. Appx. 875 (2d Cir. 2003)
    ...............................................................................................................................5

*Fleming v. MaxMara USA, Inc.*,
    644 F.Supp.2d 247 (E.D.N.Y. 2009) ...................................................................17

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295 (2004) ..........................................................................................6, 7

*Foster v. Humane Society of Rochester and Monroe Cty, Inc.*,
    724 F. Supp.2d 382 (W.D.N.Y. 2010) ...................................................................8

*Fox v. AMTRAK*,
    2009 U.S. Dist. LEXIS 12602 (N.D.N.Y. Feb. 19, 2009), *aff'd sub nom. Fox v. Nat'l R.R. Passenger Corp.*, 370 F. App'x 156 (2d Cir. 2010) ..............................................16

*Freckleton v. Mercy College NY*,
    2023 U.S. Dist. LEXIS 52148 (S.D.N.Y. 2023) .....................................................9

*Gambello v. Time Warner Communs., Inc.*,
    186 F.Supp.2d 209 (E.D.N.Y. 2002) ...................................................................13

*Gelin v. Geithner*,
    2009 U.S. Dist. LEXIS 24865 (S.D.N.Y. Mar. 26, 2009) .....................................12

*Gelin v. Snow*,
    2005 U.S. Dist. LEXIS 22537 (S.D.N.Y. Sept. 30, 2005), *aff'd*, 234 Fed. Appx. 5 (2d Cir. 2007) .................................................................................................................12

21546264.v1-4/18/25

*Giambattista v. American Airlines, Inc.*,
  584 Fed. Appx. 23 (2d Cir. 2014) .......................................................................1

*Guarino v. St. John Fisher College*,
  553 F.Supp.2d 252 (W.D.N.Y. 2008) .................................................................17

*Gubitosi v. Kapica*,
  154 F.3d 30 (2d Cir. 1998)..................................................................................10

*Guzman v. City of New York*,
  93 F. Supp. 3d 248, 256 (S.D.N.Y. 2015) ...........................................................2

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010).............................................................................6, 9

*Holcomb v. Iona College*,
  521 F.3d 130 (2d Cir. 2008)..................................................................................2

*Houser v. Norfolk Southern Railway Co.*,
  264 F. Supp. 3d 470 (W.D.N.Y. 2017) .................................................................8

*Howley v. Town of Stratford*,
  217 F.3d 141 (2d Cir. 2000)................................................................................19

*Humphries v. City Univ. of N.Y.*,
  2013 U.S. Dist. LEXIS 1690862013 (S.D.N.Y. Nov. 26, 2013) ...........................2

*Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*,
  2009 U.S. Dist. LEXIS 105866 (S.D.N.Y. Oct. 29, 2009) ..................................16

*Joseph v. Marco Polo Network, Inc.*,
  2010 U.S. Dist. LEXIS 119713 (S.D.N.Y. Nov. 10, 2010) ..................................10

*Jowers v. Family Dollar Stores, Inc.*,
  2010 U.S. Dist. LEXIS 91581 (S.D.N.Y. Aug. 16, 2010) .....................................3

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
  120 A.D.3d 18 (1st Dep't 2014) .........................................................................18

*Kirkland v. Speedway LLC*,
  260 F. Supp. 3d 211 (N.D.N.Y. 2017)................................................................17

*Krasner v. HSH Nordbank AG*,
  680 F.Supp.2d 502 (S.D.N.Y. 2010)...................................................................14

*Lawrence v. Chemprene, Inc.*,
  2019 U.S. Dist. LEXIS 185014 (S.D.N.Y. Oct. 24, 2019) ..................................21

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 (2d Cir. 2009) ............................................................................................2

*Marshall v. N.Y. City Bd. of Elections*,
322 Fed. Appx. 17 (2d Cir. 2009) ...................................................................................14

*Melman v. Montefiore Med. Ctr.*,
98 A.D.3d 107 (1st Dep't 2012) ......................................................................................13

*Moore v. Kingsbrook Jewish Med. Ctr.*,
2013 U.S. Dist. LEXIS 107111 (E.D.N.Y. July 30, 2013) .........................................6, 7

*Mucciarone v. Initiative, Inc.*,
2020 U.S. Dist. LEXIS 64440 (S.D.N.Y. April 10, 2020) .............................................19

*New World Solutions, Inc. v. NameMedia Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. Dec. 15, 2015) ...............................................................8

*Ochei v. Mary Manning Walsh Nursing Home Co.*,
2011 U.S. Dist. LEXIS 20542 (S.D.N.Y. 2011) ..............................................................5

*Perry v. Ethan Allen*,
115 F.3d 143 (2d Cir. 1997) ...........................................................................................21

*Pierre v. Air Serv Sec.*,
2016 U.S. Dist. LEXIS 128891 (E.D.N.Y. Sept. 21, 2016) ...........................................12

*Polo v. Xerox Corp.*,
2014 U.S. Dist. LEXIS 129038 (W.D.N.Y. Jan. 28, 2014) ............................................22

*Quarless v. Brooklyn Botanical Garden Corp.*,
2014 U.S. Dist. LEXIS 83153 (E.D.N.Y. June 18, 2014) ................................................9

*Rajcoomar v. Bd. Of Educ.*,
2017 U.S. Dist. LEXIS 35813 (S.D.N.Y. Mar. 13, 2017) ..............................................15

*Ramos v. Baldor Specialty Foods, Inc.*,
687 F.3d 554 (2d Cir. 2012) .............................................................................................1

*Raytheon Co. v. Hernandez*,
540 U.S. 44 (2003) ....................................................................................................11, 13

*Reid v. Aransas Cty.*,
805 F. Supp. 2d 322 (S.D. Tex. 2011) ............................................................................16

*Rumsey v. Northeast Health, Inc.*,
89 F. Supp. 3d 316 (N.D.N.Y. 2015) ..............................................................................10

*Russell v. Aid to Developmentally Disabled, Inc.*,
  753 Fed. Appx. 9 (2d Cir. 2018) ..........................................................11

*Santos v. Costco Wholesale, Inc.*,
  271 F. Supp. 2d 565 (S.D.N.Y. 2003) ( .............................................6, 7

*Sears-Barnett v. Syracuse Community Health Center, Inc.*,
  531 F. Supp. 3d 522 (N.D.N.Y. 2021) .................................................22

*Shron v. LendingClub Corp.*,
  2020 U.S. Dist. LEXIS 122657 (S.D.N.Y. July 13, 2020) ....................7

*Sletten v. LiquidHub, Inc.*,
  2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 11, 2014) ....................17

*Smith v Xerox Corp.*,
  196 F.3d 358 (2d Cir. 1999)...................................................................1

*Sumner v. U.S. Postal Serv.*,
  899 F.2d 203, 209 (2d Cir. 1990)...........................................................7

*Taylor v. Records*,
  1999 U.S. Dist. LEXIS 2583 (S.D.N.Y. Mar. 8, 1999) ......................13

*Texas Dep't of Community Affairs v. Burdine*,
  450 U.S. 248 (1981)..............................................................................11

*Tolbert v. Smith*,
  790 F. 3d 427 (2d Cir. 2015)...................................................14, 15, 19

*Torres v. Pisano*,
  116 F.3d 625 (2d Cir. 1997)..................................................................22

*Totem Taxi v. New York State Human Rights Appeal Bd.*,
  65 N.Y.2d 300 (1985) ...........................................................................22

*Tyler v. Bethlehem Steel Corp.*,
  958 F.2d 1176 (2d Cir. 1992)................................................................11

*Varughese v. Mount Sinai Med. Ctr.*,
  2015 U.S. Dist. LEXIS 43758 (S.D.N.Y. Mar. 27, 2015) ...................13

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*,
  586 Fed. Appx. 739 (2d Cir. 2014).........................................................3

*Whitfield-Ortiz v. Dep't of Educ. of N.Y.C.*,
  116 A.D.3d 580 (1st Dep't 2014)......................................................4, 13

21546264.v1-4/18/25

*Wilson v. N.Y.P. Holdings, Inc.*,
  2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. 2009) ...................................................................18

**Statutes**

42 USC § 1981 .............................................................................................................2, 6, 8

42 USC § 2000e et. seq. ...........................................................................................................8

NY EXEC. LAW § 296 ........................................................................................................8, 14

21546264.v1-4/18/25

<u>**PRELIMINARY STATEMENT**</u>

Defendant Plug Power Inc. ("Plug Power" or "Defendant") submits this motion for summary judgment seeking dismissal of Plaintiff Johnnie Felton ("Plaintiff")'s Complaint in its entirety.

<u>**SUMMARY OF MATERIAL FACTS NOT IN GENUINE DISPUTE**</u>

For a comprehensive recitation of the facts, Defendant refers the Court to Defendant's Statement of Material Facts Not in Dispute, dated April 18, 2025 ("SOF"), as well as the supporting Declarations submitted herewith.

<u>**SUMMARY JUDGMENT STANDARD**</u>

The Court is well versed in the doctrine that summary judgment is proper when there are no genuine disputes of material fact. *See e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012).

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**Plaintiff Fails to State a Claim for Race and Color Discrimination**</u>[1]

Plaintiff's First, Third, and Fifth Causes of Action are for discrimination on the basis of race under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC Section 1981 ("Section 1981), and the New York Human Rights Law ("NYHRL"). To establish a *prima facie* claim of race discrimination under the relevant statutes, a plaintiff must establish that: (1) he is a member

---

[1] Claims of employment discrimination and retaliation brought under the New York Human Rights Law are subject to the same analysis as those brought under Title VII and Section 1981. *See Giambattista v. American Airlines, Inc., 584 Fed. Appx. 23, 26 (2d Cir. 2014)*; *Smith v Xerox Corp.*, 196 F.3d 358, 363 fn. 1 (2d Cir. 1999) (affirming summary judgment dismissing NYHRL claims without discussion where Title VII, ADEA and ADA claims were independently evaluated and dismissed). Accordingly, when a claim is dismissed under Federal law, the equivalent claim under New York State law should also dismissed.

of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008); *Guzman v. City of New* York, 93 F. Supp. 3d 248, 256 (S.D.N.Y. 2015); *Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 1690862013, *18-19  (S.D.N.Y. Nov. 26, 2013); *Adams v. Northstar Location Servs., LLC*, 2010 U.S. Dist. LEXIS, *6 (W.D.N.Y. Oct. 5, 2010) (the standard for analyzing whether a plaintiff has stated a legal claim under Title VII is the same as the standard under the NYHRL).[2]

An inference of discriminatory intent can be established by, "the employer's criticisms of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). Here, Plaintiff can establish nothing of the sort, and as a result, his discrimination claims must be dismissed.

At the outset, Plaintiff points to nothing more than speculation that his race was a factor in any decision Plug Power made with respect to his employment. For example, when asked at his deposition why he believed race was a factor in the decision to terminate his employment, all

---

[2] Although the analysis for a discrimination claim under Title VII and Section 1981 is similar, a plaintiff asserting a Section 1981 claim has the added burden of establishing that the plaintiff's race or national origin was the "but-for" cause of the adverse employment action.  *See Comcast Corporation v. National Association of African American-Owned Media*, 140 S. Ct. 1009, 1014-1015 (2020) ("Here, a plaintiff bears the burden of showing that race was a but-for cause of its injury.").

21546264.v1-4/18/25

Plaintiff could articulate was that he did good work, and that he raised concerns to Human Resources regarding co-workers.[3] SOF ¶¶ 128-131.

Furthermore, none of the employees Plaintiff alleges made racially insensitive comments about him had any ability to influence the terms and conditions of Plaintiff's employment. Plaintiff reported to Mr. Rourke, and yet his allegations of racially insensitive comments all pertain to certain of Plaintiff's co-workers and subordinates (particularly Mr. Burnside, Mr. T. Wilson, Mr. O'Grady), none of whom had any influence or control over the decisions to terminate Plaintiff's employment. SOF ¶¶ 10, 12, 36, 102. It is well settled that comments made by co-workers with no ability to influence the terms and conditions of employment cannot give rise to a race discrimination claim. *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 Fed. Appx. 739, 743 (2d Cir. 2014) (holding that a plaintiff could not establish a claim of race discrimination based on racial comments made by someone who did not review the plaintiff's performance or influence the terms of the plaintiff's employment); *see also Jowers v. Family Dollar Stores, Inc.*, 2010 U.S. Dist. LEXIS 91581, *9-10 (S.D.N.Y. Aug. 16, 2010) ("'Only where decision-makers repeatedly make comments that draw a direct link between a plaintiff's membership in a protected class and an adverse employment action can inference of discriminatory animus be drawn.'") (quotation omitted).

Moreover, Plug Power has repeatedly imposed similar discipline where individuals have engaged in conduct similar to Plaintiff's—specifically inappropriate, aggressive, and threatening conduct. For example, both Mr. T. Wilson and Mr. Burnside were disciplined for engaging in conduct similar to Plaintiff. SOF ¶¶ 43-45, 65. Mr. T. Wilson received a Final Written Warning

---

[3] Plaintiff later testified that he did not in fact report many of the items he previously claimed to have reported in response to this line of questioning. SOF ¶¶ 104, 118.

21546264.v1-4/18/25

for raising his voice and shouting profanities at Plaintiff, and Mr. Burnside would have received a Final Written Warning for a similar offense, but instead his employment was terminated because he made threatening remarks to another employee before Plug Power could issue him a Final Written Warning for his confrontation with Plaintiff. SOF ¶ 43-45, 65. Notably, Mr. Burnside and Mr. T. Wilson are both Caucasian. SOF ¶¶ 45, 65.[4] Similarly, between November 2020 and July 2021, Plug Power terminated A.H., B.S., and B.B. each for engaging in aggressive and inappropriate conduct, such as yelling at colleagues, showing physical signs of aggression and invading personal space, using profanities, speaking about colleagues in a derogatory manner, and name-calling, among other things. SOF ¶ 134. B.S., and B.B. are Caucasian, and A.H. identifies as two or more races, however, none of the three identify as Black or African American. SOF ¶ 135.

Plug Power's consistent treatment of these similarly situated individuals who do not share Plaintiff's protected characteristics further severs any causal connection he attempts to establish between his race and his termination. *See Farzan v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 169743, *75-76 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment dismissing discrimination claims where the plaintiff could not show he was treated less favorably than similarly situated individuals who did not share his protected characteristics); *Whitfield-Ortiz v. Dep't of Educ. of N.Y.C.*, 116 A.D.3d 580, 581 (1st Dep't 2014) (affirming dismissal of discrimination claim where the plaintiff did not allege any similarly situated individuals outside his protected classes were treated more favorably).

---

[4] While Mr. T. Wilson's employment was not terminated, his conduct was less egregious than Plaintiff's, and he was a Warehouse Technician, not a Cell Leader/Team Lead.

21546264.v1-4/18/25

Simply put, Plaintiff's race discrimination claim is based on a "false syllogism" that courts have consistently rejected: (i) I am a member of a protected class; (ii) I suffered an adverse employment action; (iii) I suffered an adverse employment action because I am a member of a protected class. *See Ochei v. Mary Manning Walsh Nursing Home Co.*, 2011 U.S. Dist. LEXIS 20542, \*6 (S.D.N.Y. 2011); *Fayson v. Kaleida Health Inc.*, 2002 U.S. Dist. LEXIS 18591, \*28 (W.D.N.Y. 2002) (dismissing discrimination claim where plaintiff "offers no evidence of discrimination other than the fact that [plaintiff] is a white male which, standing alone, is insufficient"), *aff'd*, 71 Fed. Appx. 875 (2d Cir. 2003). Plaintiff's assertion that he *believes* he was terminated because of his race and his speculation that Mr. Rourke was a "racist democrat," without more, are patently insufficient to establish an inference of discrimination. *Ochei*, 2011 U.S. Dist. LEXIS 20542, \*6 ("[W]here, as here, a pro se pleading does not manifest[] any form of racial animus discriminatory words, prior incidents or other indications that race played a role in [the employer's] decision, even a pro se complaint is subject to dismissal.) (internal quotations omitted); *Durand v. Excelsior Care Group LLC*, 2020 U.S. Dist. LEXIS 231591, \*15 (E.D.N.Y. Dec. 9, 2020) (dismissing race and national origin discrimination claims where the plaintiffs failed to allege that their race or national origin were motivating factors behind the alleged discrimination).

Finally, as discussed in greater detail below, Plaintiff's employment was terminated for a legitimate, non-discriminatory, non-retaliatory reason; namely his inappropriate, aggressive, and threatening conduct. *See* Point III below. Accordingly, Plaintiff's claims of race discrimination must be dismissed.

21546264.v1-4/18/25

## POINT II

### Plaintiff's Retaliation Claims Fail

Plaintiff's Second, Fourth, and Sixth Causes of Action are for retaliation pursuant to Title VII, Section 1981, and the NYHRL. To establish a *prima facie* claim of retaliation, a complainant must demonstrate, (1) he engaged in protected activity; (2) the employer was aware of the activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 318 (N.D.N.Y. 2013); *see also Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565, 574 (S.D.N.Y. 2003) (the elements required to state a retaliation claim under Section 1981 "are the same as those required to make out such a claim under Title VII.").

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d. Cir. 2000) (superseded on other grounds by the Restoration Act). Generally, a causal connection can be proven "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010). Plaintiff cannot establish these essential elements.

A. Plaintiff Did Not Engage In Any Protected Activity

For purposes of Title VII and the NYHRL, a protected activity occurs only when a person opposes discrimination in violation of Title VII or the NYHRL, or participates in a proceeding, investigation or hearing under Title VII. *Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 U.S. Dist. LEXIS 107111, * 55-56 (E.D.N.Y. July 30, 2013); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004). Likewise, protected activity under Section 1981 requires some opposition to

unlawful conduct. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d. Cir. 2000) (superseded on other grounds by the Restoration Act); *Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565, 574 (S.D.N.Y. 2003) (the elements required to state a retaliation claim under Section 1981 "are the same as those required to make out such a claim under Title VII."). While protected activities are not limited to filing a formal complaint, the plaintiff must complain of discriminatory conduct. *Cruz*, 202 F.3d at 566; *Moore*, 2013 U.S. Dist. LEXIS 107111 at * 55-56; *Forrest*, 3 N.Y.3d at 313. Examples of protected activities include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Moore*, 2013 U.S. Dist. LEXIS 107111, *57-58, *quoting Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Here, Plaintiff alleges that he was retaliated against for "complaining about certain employees that Tom Rourke actually liked" and specifically for internal reports that another employee, Taylor Wilson, vandalized his car, was under the influence of alcohol and stealing time. SOF ¶ 129. At the outset, there is no record of any of Plaintiff's alleged internal reports. SOF ¶ 130. Even assuming arguendo that Plaintiff raised internal reports of this conduct, it does not amount to protected activity.

In his Complaint and at his deposition, Plaintiff claimed to have made numerous reports regarding conduct he experienced, but when questioned further, he was unsure what exactly he reported and whether he reported numerous events at all. *See generally*, Dkt. No. 13; SOF ¶ 118. Accordingly, Plaintiff cannot rely on these imprecise and self-serving claims to establish that he engaged in protected activity. *See Shron v. LendingClub Corp.*, 2020 U.S. Dist. LEXIS 122657, *9 (S.D.N.Y. July 13, 2020) ("[A] plaintiff may not rely on a self-serving declaration to create a justiciable issue where none otherwise exists."); *Brusso v. Imbeault*, 699 F. Supp. 2d 567, 583

(W.D.N.Y. 2010) ("[A] plaintiff's deposition testimony alone is insufficient to defeat a motion for summary judgment."); *Houser v. Norfolk Southern Railway Co.*, 264 F. Supp. 3d 470, 479 (W.D.N.Y. 2017) (holding that plaintiff's self-serving and speculative testimony was insufficient to defeat summary judgment); *see also New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 326 (S.D.N.Y. Dec. 15, 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment.").

Moreover, the only available documentation of any internal report from Plaintiff is a May 17, 2021 e-mail from Plaintiff to Ms. Morin and Mr. Rourke, which references Mr. Burnside "causing a hostile work environment." While Plaintiff used the phrase "hostile work environment" in his email, he did not raise any facts to alert Plug Power he was reporting workplace harassment or discrimination. SOF ¶¶ 14-18. Instead, the e-mail indicates Plaintiff was requesting assistance to discipline Mr. Burnside for using profanity and refusing to help his co-workers—neither of which is prohibited by Title VII, Section 1981, or the NYHRL. *See* NY EXEC. LAW § 296; 42 USC § 1981; 42 USC § 2000e et. seq.

The same is true of the resulting investigation; Plaintiff never indicated he was being treated differently as a result of his race or otherwise reported conduct that could have amounted to violation of any law. Thus, Plaintiff's email and the resulting investigation—even considering his use of the phrase "hostile work environment"—cannot as a matter of law amount to protected activity. *Foster v. Humane Society of Rochester and Monroe Cty, Inc.*, 724 F. Supp.2d 382, 395 (W.D.N.Y. 2010) ("First, the mere fact that plaintiff used the term "hostile environment" in her email to her supervisor is not enough [to establish protected activity]; the court must look at the substance of her complaint, not the terminology that she used.").

Absent a demonstrated protected activity, Plaintiff's retaliation claim must be dismissed.

21546264.v1-4/18/25

B.  <u>Plaintiff Cannot Establish Causation</u>

Even assuming arguendo Plaintiff engaged in some protected activity—he did not—he cannot establish any inference of causation as is necessary to maintain his claim. Generally, a causal connection can be proven "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010); *Quarless v. Brooklyn Botanical Garden Corp.*, 2014 U.S. Dist. LEXIS 83153, *13 (E.D.N.Y. June 18, 2014). However, where a plaintiff engages in subsequent misconduct, it acts as an intervening cause and severs any causal connection between protected activity and the ultimate adverse action.

Even if Plaintiff somehow engaged in protected activity, he cannot establish a causal connection between any protected activity and his ultimate discharge. While it is unclear if Plaintiff intends to rely on temporal proximity between any internal reports and his termination, they are too attenuated to create an inference of a causation. For example, Plaintiff claims that he raised internal reports to Mr. Rourke dating back to at least September 2020, but Plug Power did not terminate his employment until July 2021—nearly 10 months later. SOF ¶¶ 99, 110. Such a prolonged period of time between Plaintiff's alleged internal complaints and his ultimate discharge is far too long to establish any causal connection between the two. *See Freckleton v. Mercy College NY*, 2023 U.S. Dist. LEXIS 52148, at *20 (S.D.N.Y. 2023) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference"); *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity

alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action.").

Furthermore, protected activity does not insulate Plaintiff from his subsequent misconduct—including shouting at co-workers, repeated use of profanities, and making threatening statements, as confirmed by Ms. Morin's investigation. SOF ¶¶ 96-97. *Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998); *Rumsey v. Northeast Health, Inc.*, 89 F. Supp. 3d 316, 336-37 (N.D.N.Y. 2015) ("Thus, while the relatively short period of time between the March 2011 interview with Brodzinski and the May 20, 2011 termination of plaintiff's employment might suffice to raise the inference of temporal proximity, the intervening May 18 disturbance in the infant classroom breaks that causal connection."); *Joseph v. Marco Polo Network, Inc.*, 2010 U.S. Dist. LEXIS 119713, *56 (S.D.N.Y. Nov. 10, 2010) (finding that the plaintiffs failed to establish a *prima face* case of retaliation, despite only 10-day interval between the protected activity and termination was "short enough to create an inference of causation, the intervening security breach breaks that causal connection.") (internal citation omitted).

Finally, as discussed in greater detail below, Plaintiff's employment was terminated for a legitimate, non-discriminatory, non-retaliatory reason. As uncovered during Ms. Morin's investigation, Plaintiff use raised tones and profanities while acting aggressively when addressing employees, called employees "knuckleheads" and "clowns," referred to employees as "weak" and "soft" and insinuated they needed to "be a man." SOF ¶ 72, 79, 88, 92, 94, 96. Plug Power also determined that Plaintiff threatened employees on multiple occasions that he would "meet [them] outside," and while he was suspended pending the investigation, spoke with a co-worker to try to gain information regarding the investigation. SOF ¶¶ 71, 87, 96-97. Accordingly, Plug Power

terminated his employment for his inappropriate, aggressive, and threatening conduct. *See* Point III below.

As such, even if Plaintiff can demonstrate he engaged in protected activity of some kind—he cannot—Plug Power was still entitled to discharge him based on his subsequent misconduct. Consequently, Plaintiff's retaliation claims must be dismissed.

## POINT III

### Plaintiff's Employment Was Terminated for a Legitimate, Non-Discriminatory, Non-Retaliatory Reason

Under the *McDonnell Douglas* burden shifting analysis, if Plaintiff establishes a *prima facie* claim of discrimination or retaliation, the claims are still subject to dismissal if Plug Power can articulate a legitimate, non-discriminatory, non-retaliatory reason for his termination. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 51–52 (2003); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Russell v. Aid to Developmentally Disabled, Inc.*, 753 Fed. Appx. 9, 13-14 (2d Cir. 2018). Importantly, Defendant's burden is "merely to *articulate (not prove)*, via admissible evidence, a legitimate reason for the employment decision." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992) (emphasis added). Plaintiff must then "demonstrate that the employer's proffered reason was not the 'true reason' for the employment decision," which can be done "either by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer, or by persuading the trier of fact that the employer's proffered explanation is unworthy of belief." *Tyler*, 958 F.2d at 1180-81; *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 802, 805.

Assuming *arguendo* that Plaintiff has established a *prima facie* case of discrimination or retaliation—he has not—his claims still fail because Plug Power had a legitimate, non-discriminatory, non-retaliatory reason to terminate his employment; namely, his inappropriate,

aggressive, and threatening conduct. *See e.g.*, *Pierre v. Air Serv Sec.*, 2016 U.S. Dist. LEXIS 128891, *20 (E.D.N.Y. Sept. 21, 2016) (finding "insubordinate and disrespectful" behavior to be legitimate, non-discriminatory reason for termination); *Gelin v. Geithner*, 2009 U.S. Dist. LEXIS 24865, *61 (S.D.N.Y. Mar. 26, 2009) (finding that disrespectful treatment of a co-worker was a legitimate, nondiscriminatory reason for failure to promote); *Gelin v. Snow*, 2005 U.S. Dist. LEXIS 22537, *26 (S.D.N.Y. Sept. 30, 2005) (legitimate, non-discriminatory reason for suspension where plaintiff's conduct was perceived as "threatening"), *aff'd*, 234 Fed. Appx. 5 (2d Cir. 2007); *Edwards v. City of New York*, 2005 U.S. Dist. LEXIS 34376, *47 (S.D.N.Y. Dec. 19, 2005) ("Insubordinate and unprofessional conduct is a legitimate, non-discriminatory reason for terminating an employee."); *Cooney v. Consol. Edison*, 220 F.Supp.2d 241, 252 (S.D.N.Y. 2002) (legitimate, non-discriminatory reason for plaintiff's suspension where plaintiff "had harassed and/or verbally abused and intimidated a number of co-employees"), *aff'd*, 63 Fed. Appx. 579 (2d Cir. 2003).

As previously discussed, Ms. Morin conducted several investigations into warehouse employees, including Plaintiff. During these investigations, she found that Plaintiff engaged in inappropriate and unprofessional conduct, including yelling profanities at co-workers, calling them "weak" and "soft," threatening to "meet them outside," and making emasculating statements to them to "be a man," among other things. This conduct was particularly egregious because Plaintiff directed it at his subordinates. Plainly Plaintiff's conduct amounts to a legitimate, non-discriminatory, non-retaliatory reason sufficient to justify Plaintiff's discharge. *See Pierre*, 2016 U.S. Dist. LEXIS 128891 at *20; *Geithner*, 2009 U.S. Dist. LEXIS 24865 at *61; *Snow*, 2005 U.S. Dist. LEXIS 22537 at *26; *Edwards*, 2005 U.S. Dist. LEXIS 34376 at *47; *Cooney*, 220 F. Supp. 2d at 252.

Accordingly, the burden shifts to Plaintiff to show that his misconduct was not the reason for his termination, and instead, the decision was discriminatory or retaliatory. *Raytheon*, 540 U.S. at 51–52. Indeed, Plaintiff cannot meet this burden, as he has offered nothing more than bald assertions that Plug Power's reason for terminating him was somehow discriminatory or retaliatory.

In fact, Plaintiff admitted to Ms. Morin during her investigation that he had engaged in a significant portion of the conduct that gave rise to his termination, including inviting employees to speak outside, referring to them as weak and soft, and telling them to "be a man." SOF ¶¶ 96-97. Plaintiff's admissions prevent him from establishing pretext. *See Varughese v. Mount Sinai Med. Ctr.*, 2015 U.S. Dist. LEXIS 43758, *149–50, 155 (S.D.N.Y. Mar. 27, 2015); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 121–22 (1st Dep't 2012); *Gambello v. Time Warner Communs., Inc.*, 186 F.Supp.2d 209, 224 (E.D.N.Y. 2002); *Taylor v. Records*, 1999 U.S. Dist. LEXIS 2583, *27-28 (S.D.N.Y. Mar. 8, 1999).

Moreover, Plug Power conducted a number of investigations, and despite receiving multiple reports in previous investigations that Plaintiff had engaged in inappropriate conduct, those previous investigations resulted in discipline and discharge for Caucasian employees, like Mr. Burnside and Mr. T. Wilson. Plug Power's similar treatment of similarly situated individuals outside his protected class, again, means he cannot establish pretext. *Farzan*, 2013 U.S. Dist. LEXIS 169743, *75-76 (granting summary judgment dismissing discrimination claims where the plaintiff could not show he was treated less favorably than similarly situated individuals who did not share his protected characteristics); *Whitfield-Ortiz*, 116 A.D.3d at 581 (affirming dismissal of discrimination claim where the plaintiff did not allege any similarly situated individuals outside his protected classes were treated more favorably).

21546264.v1-4/18/25

Based on the foregoing, Plug Power has demonstrated a legitimate, nondiscriminatory, nonretaliatory reason for Plaintiff's termination, which Plaintiff is unable to refute. As such, Plaintiff's discrimination and retaliation claims must be dismissed on this additional basis.

## POINT IV

### Plaintiff's Hostile Work Environment Claims Also Fail

While Plaintiff's First, Third, and Fifth Causes of Action do not explicitly state a claim for a hostile work environment, they include reference to harassment and that he was subjected to inferior terms of employment due to his race. To the extent he attempts to establish a hostile work environment claim, Plaintiff must show that he was subjected to "inferior terms, conditions or privileges of employment" because of his membership in a protected class, the objectionable conduct rises to a level to be actionable, and a sufficient basis to impute the objectionable conduct to Plug Power. NY EXEC. LAW § 296 (1) (h); *Tolbert v. Smith*, 790 F. 3d 427, 439 (2d Cir. 2015). Actionable conduct must create an environment that is both objectively and subjectively hostile, meaning that a reasonable person would find the environment hostile or abusive, and the victim must also perceive the environment to be hostile or abusive. *Berrie v. Bd. of Educ. of the Port Chester-Rye Union Free School Dist.*, 750 Fed. Appx. 41, 47 (2d Cir. 2018).

Notably, statutes that prohibit harassment, including Title VII, Section 1981 and the NYHRL, are not "general civility code[s] for the American workplace". *Marshall v. N.Y. City Bd. of Elections*, 322 Fed. Appx. 17, *19 (2d Cir. 2009); *Krasner v. HSH Nordbank AG*, 680 F.Supp.2d 502, 519 (S.D.N.Y. 2010). Rather, these statutes only prohibit harassment that is discriminatory and, to be actionable, the hostile conduct must be directed at an individual because of his or her membership in a protected class. *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from

consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination".); *Tolbert v. Smith*, 790 F. 3d 427, 439 (2d Cir. 2015) ("It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic".).

A. <u>Plaintiff's Allegations Do Not Give Rise to an Actionable Hostile Work Environment Based on Race or Color</u>

Here, Plaintiff relies on different categories of allegedly harassing conduct, none of which is actionable, including: (1) conduct he did not experience; (2) facially neutral conduct that bears no relationship to his protected characteristics; (3) conduct Plaintiff admitted did not bother him; and (4) conduct Plug Power did not condone in any way.

At the outset, Plaintiff cannot establish a hostile work environment premised on conduct that he did not experience during his employment. As Plaintiff confirmed at his deposition, he never witnessed any photos posted at Plug Power containing any racially insensitive language, and in fact, saw the photos for the very first time when he received them from Mr. Ringling months after his termination. SOF ¶¶ 123-125. Likewise, Mr. Ringling confirmed he took the photos embedded in the Complaint, but not until Plaintiff was suspended and possibly after his termination. SOF ¶¶ 123-125.[5]

While Plug Power vehemently denies these photos were ever posted at its premises—even to the extent they were—as a matter of law, they could not create an actionable hostile work environment for Plaintiff because he never saw them until after his employment ended. *Rajcoomar v. Bd. Of Educ.*, 2017 U.S. Dist. LEXIS 35813, *19 (S.D.N.Y. Mar. 13, 2017) ("Here, however, none of the allegations that would make plaintiff's claims timely can be said to be part of a hostile

---

[5] Plaintiff disagrees with Mr. Ringling's testimony to an extent, but conceded that he did not see either photo containing any racially insensitive language until after his termination. SOF ¶¶ 122-126. He maintains, however, that he witnessed the photo with the word "asshole" written next it. SOF ¶ 125. To the extent he witnessed that photo, it amounts to facially-neutral conduct, as discussed further below.

work environment because they all took place after plaintiff was terminated."); *see also*, *Reid v. Aransas Cty.*, 805 F. Supp. 2d 322, 335 (S.D. Tex. 2011) ("In contrast to Plaintiff's discrimination and retaliation claims, however, Plaintiff cannot use events that happened after his termination to support his hostile work environment claim."); *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, 2009 U.S. Dist. LEXIS 105866, *24-25, n.15 (S.D.N.Y. Oct. 29, 2009) ("Plaintiff cites no precedent in support of her apparent argument that her hostile work environment claim can be based on events occurring after her termination."); *Fox v. AMTRAK*, 2009 U.S. Dist. LEXIS 12602, *16 (N.D.N.Y. Feb. 19, 2009) ("Here, Fox was no longer an active employee when the incidents allegedly occurred, and Fox did not witness any of the statements to co-workers regarding their need to 'watch their backs.' Therefore, the Court fails to see how these incidents affected his working environment."), *aff'd sub nom. Fox v. Nat'l R.R. Passenger Corp.*, 370 F. App'x 156 (2d Cir. 2010) (summary order); *Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*, 2008 U.S. Dist. LEXIS 58040, *49-50 (S.D.N.Y. 2008) (transfer denial not evidence of a hostile work environment because it did not occur until after plaintiff's termination).

Plaintiff also relies on facially neutral occurrences, which bear no relationship to his protected characteristics. For example, he alleges the papers were missing from his desk, that a stuffed animal was placed on his desk, that Mr. T. Wilson vandalized his vehicle, and that someone changed the background screen on his computer to a shirtless man, among other things. SOF ¶¶ 112, 116. Without more, these occurrences cannot contribute to a hostile work environment because there is no indication they were in any way related to Plaintiff's race or color. *See Alfano*, 294 F.3d at 378 ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some

21546264.v1-4/18/25

circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."); *Fleming v. MaxMara USA, Inc.*, 644 F.Supp.2d 247, 263-64 (E.D.N.Y. 2009) (granting summary judgment dismissing hostile work environment claim where plaintiff could not demonstrate any connection between alleged mistreatment and her race); *Guarino v. St. John Fisher College*, 553 F.Supp.2d 252, 262 (W.D.N.Y. 2008) (holding plaintiff failed to establish a *prima facie* hostile work environment claim where the plaintiff could not demonstrate any connection between facially-neutral conduct and protected characteristics).

Plaintiff also testified that much of the conduct he allegedly experienced did not bother him. SOF ¶ 119. For example, Plaintiff testified at his deposition that he "wasn't too bothered" by the stuffed animals, notes about him, and pictures of him posted in Plug Power's warehouse. SOF ¶ 119. That these occurrences did not bother him means, as a matter of law, they cannot support a hostile work environment claim. *Berrie*, 750 Fed. Appx. at 47 (noting that actionable conduct must create an environment the victim perceives to be hostile or abusive); *Kirkland v. Speedway LLC*, 260 F. Supp. 3d 211, 222 (N.D.N.Y. 2017) (discussing the standard for a hostile work environment claim under the NYHRL); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 534-35 (E.D.N.Y. 2005) (noting that plaintiff's testimony that sexual conduct "didn't bother [him]" belied his claim that he was exposed to a sexually hostile work environment).

The remainder of Plaintiff's allegations pertain to conduct that he attributes to employees he identifies as subordinates—primarily Mr. T. Wilson, Mr. Burnside, and Mr. O'Grady. Notably, much of this conduct was conveyed to Plaintiff secondhand, including many of the statements he attributes to Mr. O'Grady. While secondhand statements "should not be ignored," such statements "are not as impactful on one's environment as are direct statements; consequently, they are less persuasive in stating a hostile work environment claim." *Sletten v. LiquidHub, Inc.*, 2014 U.S.

Dist. LEXIS 94697, *21 (S.D.N.Y. July 11, 2014). Moreover, while the conduct they engaged in was not motivated by race, both Mr. Burnside and Mr. T. Wilson were disciplined for their inappropriate conduct in rapid succession after each was involved in a confrontation with Plaintiff. SOF ¶¶ 43-45, 65.

Nevertheless, even assuming these allegations are true and would otherwise be actionable, they do not rise to the level to create a hostile work environment. *See Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 19 (1st Dep't 2014) (dismissing NYHRL hostile work environment claim "since a reasonable person would consider the complained-of conduct," including "only isolated remarks or incidents," as "nothing more than petty slights and trivial inconveniences"). Even under the more stringent "petty slights or trivial inconveniences" standard applied under the NYHRL, courts have dismissed hostile work environment claims based on significantly more egregious conduct than that alleged by Plaintiff. *See e.g.*, *Diagne v. New York Life Ins. Co.*, 2010 U.S. Dist. LEXIS 129530, *50 (S.D.N.Y. Dec. 8, 2010) (granting summary judgment for defendant where plaintiff alleged that defendant made racial slurs because the evidence was "of such a minimal character and supported by such inconclusive and vague evidence that a reasonable jury would have to conclude that it represents, at best, 'petty slights or trivial inconveniences.'"); *report and recommendation adopted* 2011 U.S. Dist. LEXIS 6037 (S.D.N.Y. January 21, 2011); *Davis-Bell v. Columbia University*, 851 F.Supp.2d 650, 675 (granting summary judgment on a NYCHRL hostile work environment claim where plaintiff alleged he was told that his employer "did not like [B]lacks"); *Wilson v. N.Y.P. Holdings, Inc.*, 2009 U.S. Dist. LEXIS 28876, *81-82 (S.D.N.Y. 2009) (granting defendant summary judgment and holding that conduct including comments such as "training females is like training a dog" and "women need to be horsewhipped" amounted to nothing more than "petty slights and inconveniences"). If the conduct

21546264.v1-4/18/25

does not rise to the level of a petty slight or trivial inconvenience, it necessarily cannot be either severe or pervasive, as necessary to be actionable under federal law. *See Mucciarone v. Initiative, Inc.*, 2020 U.S. Dist. LEXIS 64440, *36 (S.D.N.Y. April 10, 2020) (noting the "petty slight or trivial inconvenience" standard is a lower, loosened standard from the severe or pervasive harassment standard).

B.  <u>There Is Insufficient Evidence to Impute Liability to Plug Power</u>

To establish liability for a hostile work environment, in addition to showing the existence of actionable conduct, a plaintiff also must demonstrate a "specific basis exists for imputing the objectionable conduct to the employer." *Tolbert*, 790 F. 3d at 439.

i.  *Plaintiff Cannot Impute Liability to Plug Power Under Federal Law*

Under Title VII and Section 1981, "when the harassment is attributable to a co-worker, rather than a supervisor … the employer will be held liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998). Such liability can only be demonstrated by showing that an employer "failed to provide a reasonable avenue for complaint[,]" or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000); *see also Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) (employers can establish an affirmative defense to an employee's claims if the employer maintained a complaint procedure for reporting harassment that the employee failed to utilize). Even if the alleged harassment is attributable to a supervisor, the company can avoid liability by establishing: "(1) it exercised reasonable care to prevent and correct harassment, and (2) the plaintiff-employee unreasonably failed to take advantage of the opportunities provided by the employer." *Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 388 (S.D.N.Y. 2010).

Here, Plug Power maintained a reporting procedure in its Prohibition of Discrimination, Sexual and Other Workplace Harassment, and Retaliation Policy and Reporting Procedure, which Plaintiff received and acknowledged. SOF ¶¶ 7-9. The reporting procedure encourages all employees to report conduct they are aware of, and in fact, requires supervisors to do so. SOF ¶¶ 7-9. The policy further provides that Plug Power will conduct an immediate investigation into all reports of harassment. SOF ¶¶ 7-9. Yet, Plaintiff did not report any of the conduct he alleges in accordance with Plug Power's Prohibition of Discrimination, Sexual and Other Workplace Harassment, and Retaliation Policy and Reporting Procedure. Throughout his Complaint, Plaintiff alleges in a conclusory fashion that he was constantly complaining about harassment and that nothing was ever done about it. *See generally*, Dkt. No. 13. Other than his own self-serving statements, Plaintiff has no proof that he routinely complained about harassment and it went unaddressed. Moreover, Plaintiff claims he was a supervisor, and yet admitted throughout his deposition that, contrary to the allegations in the Complaint, he was either unsure that he reported various conduct or confirmed that he <u>did not</u> report it. SOF ¶ 104, 118.

The available record also demonstrates that Plaintiff reported other issues with Mr. T. Wilson and Mr. Burnside, and that Plug Power took swift action to investigate and remediate the behavior. SOF ¶¶ 43-45, 65. For example, Ms. Morin and Mr. Rourke investigated Plaintiff's confrontation with Mr. T. Wilson and issued Mr. T. Wilson a Final Written Warning for his inappropriate conduct. SOF ¶ 65. Likewise, they investigated Plaintiff's confrontation with Mr. Burnside, during which both shouted profanities at one another, and prepared a Final Written Warning for Mr. Burnside, before terminating his employment for unrelated threatening conduct. SOF ¶¶ 43-45.

The fact that Plaintiff was able to report concerns about Mr. T. Wilson and Mr. Burnside for various conduct, but never once mentioned that he believed they were engaging in racially motivated conduct is telling. SOF ¶¶ 12-18, 47, 62-64. Plaintiff had numerous documented opportunities to speak with Ms. Morin and Mr. Rourke and yet there is no evidence to indicate he ever reported Mr. T. Wilson's alleged vandalism of Plaintiff's vehicle, Mr. Burnside's September 2020 voicemail, that anyone was stealing papers from or had left a stuffed animal on his desk, or that anyone changed Plaintiff's computer background. SOF ¶¶ 12-18, 47, 62-64. Plaintiff also admitted that he did not report Mr. O'Grady's alleged comments. SOF ¶ 104.

In sum, Plug Power cannot be held liable for sporadic and minor incidents involving Plaintiff's co-workers when he did not report such incidents, and when Plug Power took prompt remedial measures when it became aware of issues between Plaintiff and his co-workers—even if there was no allegation or evidence that those occurrences were motivated by race or any other protected characteristic. *See Perry v. Ethan Allen*, 115 F.3d 143 (2d Cir. 1997) (affirming district court's dismissal of a hostile work environment claim where the employer investigated, confronted the employees accused, and warned that harassment would not be tolerated); *Lawrence v. Chemprene, Inc.*, 2019 U.S. Dist. LEXIS 185014, *23 (S.D.N.Y. Oct. 24, 2019) (dismissing hostile work environment claim where the employer's management was not generally aware of most of the alleged racially derogatory comments, and as soon as the employer became aware of some of the alleged comments, it promptly investigated and took corrective action).

Because Plug Power provided a reasonable avenue for complaint, through its Prohibition of Discrimination, Sexual and Other Workplace Harassment, and Retaliation Policy and Reporting Procedure, and promptly addressed all conduct it became aware of, there is no basis to impute

liability to Plug Power for Plaintiff's hostile work environment allegations, and his claims must be dismissed on this additional basis.

ii.    *There is Similarly No Basis To Impute Liability Under New York Law*

Meanwhile, under the NYHRL, liability can only attach to Plug Power if it somehow became a party to the conduct "by encouraging, condoning or approving it." *Polo v. Xerox Corp.*, 2014 U.S. Dist. LEXIS 129038, *15 (W.D.N.Y. Jan. 28, 2014). Indeed, "it cannot be rationally concluded … that an employer has been guilty of discrimination whenever any employee at any level commits, out of personal pique, a disapproved and unanticipated discriminatory act." *Totem Taxi v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305-06 (1985).

Again, the available record demonstrates that Plug Power did not condone any of the conduct Plaintiff alleges created a hostile work environment. Rather, to the extent Plug Power was informed of conduct that occurred in its Clifton Park warehouse, it thoroughly investigated the reports and took reasonable steps to prevent future occurrences, including disciplining and terminating Plaintiff's co-workers—including Mr. T. Wilson and Mr. Burnside. SOF ¶¶ 43-45, 65; *see Torres v. Pisano*, 116 F.3d 625, 638-39 (2d Cir. 1997) (granting summary judgment finding employer was not liable for harassment where supervisor did not breach duty to protect the plaintiff from further harassment); *Sears-Barnett v. Syracuse Community Health Center, Inc.*, 531 F. Supp. 3d 522, 537-38 (N.D.N.Y. 2021) (granting summary judgment dismissing hostile work environment claim where employer investigated reports and implemented effective remedial measures); *Polo*, 2014 U.S. Dist. LEXIS 129038 at *15 (noting that under the HRL, "the employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning or approving it"); *Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 137 (S.D.N.Y. 2009) (granting summary judgment dismissing hostile work environment

claim where there was no evidence the defendant encouraged or approved of harassing conduct, and in fact, investigated and made repeated efforts to end harassing conduct).

Because there is no evidence in the record that Plug Power condoned, encouraged or otherwise became a party to any conduct giving rise to a hostile work environment, Plaintiff's claims must be dismissed on this additional basis.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully request that the Court grant summary judgment in their favor and dismiss Plaintiff's Complaint in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: April 18, 2025

BOND, SCHOENECK & KING, PLLC

By:    <u>s/ Paul J. Buehler, III</u>
       Paul J. Buehler, III, Esq.
       Michael D. Billok, Esq.
*Attorneys for Defendant*
22 Corporate Woods Blvd, Suite 501
Albany, New York 12211
T: 518.533.3216
F: 518.533.3284
E: pbuehler@bsk.com
   mbillok@bsk.com

TO:   Johnnie Felton
      23 Indiana Street
      Hicksville, NY 11801
      *Pro Se Plaintiff*

21546264.v1-4/18/25